Complainant herein is receiver of Frank Lee Dickinson 
Company, an insolvent corporation of this state, and hereinafter referred to for convenience as the corporation. The bill is in behalf of the unpaid creditors of the corporation, and seeks to fasten personal liability on the directors of the corporation for its unpaid debts and the administration expenses of the receivership, and also to fasten a like liability on the First National State Bank, a mortgagee creditor of the corporation, who was paid in full by the corporation prior to the receivership.
The material facts do not appear to be in substantial dispute.
February 20th, 1924, the company owed the bank $45,000, and had applied for an increased loan. The bank on that day loaned the corporation an aditional $45,000 and received from the corporation its note for $90,000, secured by a chattel mortgage on practically all of the corporation assets. The receiver now seeks to have that mortgage declared to have been void, as to the creditors of the corporation now listed by him, and claims that the payment of the debt due to the bank, prior to the decree of insolvency, to the exclusion of the creditors now listed by him, has imposed upon the bank and the directors of the corporation a personal liability to these unpaid creditors.
It must be recognized that, except as restricted by our statutes, an insolvent corporation has the same dominion over its assets, and its creditors have the same power to reach those assets, as in the case of an insolvent natural person.Gallagher v. Asphalt Co., 65 N.J. Eq. 258, 270; Brouwer,Receiver, v. Harbeck, 9 N.Y. 589, 593. Our incapacitating statutes, so far as insolvency of a corporation is concerned, are sections 64, 65 and 66 of our Corporation act. 2 Comp. Stat.pp. 1638 et seq. The former section renders void, as against creditors, transfers of corporate assets "whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same," except transfers to bona fide purchasers for valuable consideration, *Page 44 
before the corporation shall have actually suspended its ordinary business, without notice of such insolvency or of the sale being made in contemplation of insolvency.
I am satisfied that the provisions of that section not only rendered the mortgage to the bank void, but also denied to the bank the right subsequently to receive payment of the money due to it, as against unpaid creditors of the corporation.
The evidence discloses that for a considerable time prior to the execution of the mortgage the business of the corporation had been conducted at a loss, and at the time the mortgage was executed no hope of successful future operations existed. Accordingly, the bank agreed to make the additional loan provided the corporation would secure the bank for its new loan and past loans by a chattel mortgage on all its property and also agree to discontinue its regular business and dispose of its assets and pay all its debts. That plan being determined upon, the additional loan was made and the mortgage executed, and the business of the corporation was discontinued except so far as new purchases were necessary to aid in marketing its stock on hand. From the assets of the corporation all persons whom the corporation recognized as its creditors were paid in full, including the bank. The statutory proceedings for dissolution and winding up the business of the corporation were not taken. At the time the mortgage was made the management of the corporation regarded its assets in excess of its liabilities, and so represented to the bank, and the bank made the additional loan in that belief. But there existed at that time an outstanding contractual obligation of the corporation to the Franklin Sugar Refining Company. That contract appears not to have been regarded by the corporation as a binding obligation and was not listed among its liabilities, and the bank was not apprised of its existence. Some time after the bank had been paid in full, and all other creditors whom the corporation recognized as lawful creditors had also been paid in full, suit was brought against the corporation by the sugar refining company and judgment recovered for about $16,000. *Page 45 
The sugar refining company then filed a bill for the appointment of a receiver in insolvency; in that suit the corporation was adjudicated insolvent and the present receiver appointed. The present suit was then brought by the receiver in behalf of unpaid creditors. The only unpaid creditors other than the sugar refining company are the department of internal revenue, for additional income taxes which have been ascertained for the years 1916, 1917 and 1918, and two other small claims which the corporation disputes. Since the assets of the company appear to have been marketed to the best possible advantage, it must now be said to be an ascertained fact that at the time the mortgage was given the corporation was insolvent in the sense that the value of its assets were materially less than the amount of its lawful obligations.
The mere circumstance that the liabilities of a corporation exceed its assets does not necessarily constitute insolvency. A corporation, so circumstanced, which is actively pursuing its regular business with reasonable expectations of business conditions improving may not be deemed insolvent within the intent of section 64. Accordingly, insolvency, as contemplated by that section, has been authoritatively defined as denoting a general inability of the corporation to meet pecuniary obligations as they mature, by means of either available assets or an honest use of credit. Empire State Trust Co. v. TrusteesFisher, 67 N.J. Eq. 602, 604. But this defined test of insolvency, if applied to a corporation with indebtedness in excess of assets, necessarily embodies the idea that the corporation has not permanently withdrawn from business operations; if business operations have permanently ceased, and prospects of improved conditions have ended, a corporation with obligations in excess of its assets is clearly insolvent. SeeAbrams v. Manhattan Consumers Brewing Co., 126 N.Y. Supp. 844,846. That situation existed when the last loan was made by the bank and the mortgage executed. All notion of future business activities by the corporation had been then permanently abandoned, and the cessation of business and the loan were *Page 46 
made integral parts of one transaction — the former as a condition precedent to the latter. In such circumstances a corporation with obligations in excess of its assets must be deemed insolvent within the intent of section 64.
Nor can the loan which was made by the bank be said to have been made before the corporation had "actually suspended its ordinary business" within the intent of the proviso of section 64, since suspension was exacted by the bank as a precedent condition of its loan, and that requirement was acceded to by the corporation.
Since, in the circumstances ascertained, section 64 of our Corporation act forbids a corporation to transfer its assets and declares such transfers "utterly null and void as against creditors," it necessarily follows that not only the mortgage but also the future payment of the indebtedness of the corporation to the bank were within the statutory inhibition. See Miller v.Audenreid, 67 N.J. Eq. 252. The measure of liability of the bank to complainant-receiver will be later considered.
Nor can the directors of the corporation escape personal liability on any theory of exemption by reason of errors of judgment. The corporation determined to discontinue its regular business and wind up its affairs and distribute its assets. Our statute directs the method by which this shall be done, and specifically provides that in thus dissolving the directors shall be jointly and severally responsible for the debts of the corporation to the amount of the moneys and property of the corporation which shall come to their hands. Sections 31, 54 and 55 of Corporation act. Had this corporation been dissolved pursuant to the requirements of our Corporation act, and its assets distributed to the exclusion of some of its creditors, no shadow of doubt touching the personal liability of its directors could be said to exist. Keene v. Maple Shade Land andImprovement Co., 63 N.J. Eq. 321. It seems equally clear that after insolvency and cessation of business the assumption of the right to distribute all the assets of the corporation to the exclusion of some of its creditors must not only be regarded as forbidden *Page 47 
by section 64 of the act, but also by the sections of the act last above cited, which sections are also designed to secure equal distribution. In thus proceeding contrary to the provisions of our statute, and beyond the powers of the corporation as restricted by our statute, the directors have necessarily incurred personal liability to the unpaid creditors.
Nor can the liability of the directors be measured by their individual activity, since none opposed the course pursued. Under section 12 of our Corporation act the business of a corporation must be managed by its directors, and a director's term of office extends to the time another is chosen and qualified in his stead. In the absence of resignation a "holdover" director must be deemed a director to the same extent as during the year for which he was elected.
It is not to be understood that defendant-bank is liable to pay to complainant-receiver an amount which will fully satisfy the unpaid debts of the corporation and administration expenses, as sought by the bill, since that would result in the payment of the sugar refining company's claim and the other smaller claims in full to the exclusion of the claim of the bank to the amount thus paid. The bank has acted in good faith throughout. Its final loan to the corporation was for the purpose of enabling the corporation to pay all its debts, and in the belief that the corporate assets and money loaned were adequate for that purpose and it received payment of the money due to it in the belief that all lawful obligations of the corporation were paid Its difficulties have arisen from the neglect of the corporation to include the sugar refining company claim among its liabilities in the list of liabilities submitted to the bank with its application for the loan. Accordingly, the primary liability should fall upon the directors of the corporation, and the receiver, in the interest of all creditors, should now, under the decree be entered herein, to be operative against the directors as a judgment, enforce payment by the directors of the necessary amount to satisfy unpaid claims, but not including administration expenses. The burden of administration expenses should be shared by creditors. Should the *Page 48 
amount so recovered be inadequate to pay all debts, the burden of the deficiency should be shared by all unpaid creditors in proportion to their claims, and there should be then enforced against the bank payment of only an amount sufficient to place the bank and the creditors who have yet received nothing on apro rata parity of loss.
A decree will be advised of the nature stated.